

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| CHRISTINE WILLIAMS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:04-CV-188 |
| | § | JUDGE HEARTFIELD |
| GROVETON TEXAS HOSPITAL | § | |
| AUTHORITY | § | |

# MEMORANDUM OPINION AND ORDER

This case is brought under Title VII of the Civil Rights Act of 1964, Tex. Gov. Code §
554.002, and Article 1 § 19 of the Texas Constitution.  Plaintiff Christine Williams
("Williams") alleges that Groveton Texas Hospital Authority ("Groveton") unlawfully
discriminated against her, unlawfully retaliated against her, and violated her civil rights
without due process.  Specifically, Williams seeks damages for being demoted from dietary
supervisor to head cook, for being downgraded from full time employment to part time
employment, and for having her work hours reduced.

The Court conducted a bench trial of this matter from July 25, 2005, through July 26,
2005.  Having carefully considered the weight and credibility of all oral and documentary
evidence and the respective arguments and post-trial submissions of the parties, the Court
finds that Williams has failed to establish any claim of discrimination, retaliation, or
deprivation of civil rights without due process.  The following findings of fact and
conclusions of law are issued under Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1.  Williams, an African-American female, is a resident of Trinity County, Texas.

2.  Groveton is a municipal hospital authority established under Chapter 262 of the
    Texas Health and Safety Code. Groveton's primary function is providing nursing
    home services to residents.

3.  Williams started her employment with Groveton as a nurse's assistant. Williams
    eventually began working in the kitchen, where she advanced to the position of
    "dietary supervisor." Williams earned $7.40 per hour and received medical and dental
    insurance and vacation pay.

4.  Groveton's administrator is Randall Archer ("Archer"). Archer operates the nursing
    home under the supervision of a board of directors.

5.  In May of 2000, Williams quit Groveton for three weeks because she did not agree
    with Archer's decision to terminate the employment of a number of kitchen
    employees. Williams rejoined Groveton and did not receive any written disciplinary
    warnings in 2001, 2002, or 2003.

6.  Part of Williams's job as supervisor was to be responsible for her kitchen employees
    and to "cover" when an employee called in sick and no other employee could assist.
    Prior to April 19, 2004, there were a number of times where Williams refused to cover
    for an absent employee named Priscilla Josey ("Josey"). Josey, a white female, was
    demoted to part time before being terminated in February of 2005.

7.  Another one of Williams's supervisory duties was ordering kitchen supplies. Archer
    and Williams experienced a number of disagreements over Williams's supply ordering.

8.  A Groveton kitchen order for industrial strength degreaser would usually cost around
    $160. Plaintiff once placed an order for $1100 worth of degreaser. After this incident,
    Archer ordered Williams not to order any other kitchen supplies. Williams disobeyed
    Archer and placed at least one more supply order before April 19, 2004. This final
    order amounted to $500 for a single unit of degreaser.

9.     In early 2004, Williams provided statements for Clotiel Horace ("Horace") in
       Horace's discrimination lawsuit against Groveton. As part of discovery in the Horace
       case, Archer received Williams's statements on March 2, 2005.

10.    At least two other Groveton employees provided statements on Horace's behalf.
       Letha Johnson ("Johnson") provided one statement and Williams's mother provided
       the other.  Neither Johnson nor Williams's mother were demoted.

11.    On April 19, 2004, Archer changed Williams's job from dietary supervisor to head
       cook.  Williams's hours stayed the same and her hourly wage rate did not change.
       Williams also requested a reduction in working days by stating "I'll take a cut in days"
       to Archer.  Williams asked for, and received, vacation pay from Groveton.

12.    From April 19, 2004 to June 15, 2004, Williams requested numerous days off from
       work, had numerous scheduled days off, and had several absences.  Because of these
       absences and days off, Williams worked approximately fifteen (15) days per month
       during this time.

13.    Between April 19, 2004 and June 15, 2004, Williams worked less than thirty-six (36)
       per week.  Full time employment at Groveton is defined as any employee working
       thirty-seven (37) or more hours per week.

14.    Because of Williams's requested days off, scheduled days off, and absences, Williams
       no longer qualified as a full time Groveton employee.

15.    On June 15, 2004, an investigator from the Texas Attorney General's Office came to
       Groveton.  Williams met with this investigator and answered the investigator's
       questions.  Archer saw a number of Groveton employees talking to the investigator.

16.    After observing the demeanor and considering the testimony of various witnesses
       regarding Williams's June 16, 2004 demotion, the Court finds Archer to be the most
       credible.

17.    Archer did not know that it was Williams who made a report to the Attorney

General's office.  On the day Williams met the investigator, Archer went to a Groveton employee's home to get this employee to cover a shift.  This employee lived near Williams and Archer was required to drive down Williams's street in order to reach the employee's home.

18.     Archer reduced Williams's hours because of her request to "take a cut in days."

19.     Groveton notifies employees that working thirty-six (36) hours or fewer results in loss of full-time status.  Groveton employees are counseled and provided a memo explaining the loss of benefits arising from a downgrade to part-time status.

20.     On June 16, 2004, Williams was counseled and her status was downgraded from full time employment to part time employment.  This downgrade was a result of Williams's failure to work enough hours to be considered a full-time employee.

21.     In July of 2004, Williams's work amounted to two days per week.  As of the date of trial, Williams remained an employee at Groveton and, although her hours fluctuated, they remained minimal.

22.     Williams has remained eligible to work a greater number of hours per week at Groveton; however, Williams is a part time employee and work hours are only available after full-time employees have set their schedules.  Full-time kitchen staffers know to call either Williams or another Groveton employee when they need someone to cover a shift.

23.     Williams's minimal work hours are a result of the number of hours worked by full-time Groveton employees.

24.     When counseled by Archer on the opportunity to pick up more work hours, Williams simply replied "okay" to Archer.  As of the date of trial, Williams has not requested a return to full-time status.

25.     At all times relevant to this matter, Groveton had a procedure for employees to resolve grievances or disputes with superiors.  Employees could appeal supervisor decisions through their chain of command: supervisor, administrator, and then the

board of directors.

26.    Groveton employees are familiar with the chain of command and are briefed on the
dispute resolution process during "in-service" meetings that occur on the 15th of every
month.

27.    Williams failed to appeal her demotion to part time employee to the board of
directors.  While Williams may have spoken to particular directors, these
conversations did not comply with Groveton's grievance procedure.  Williams's never
brought her June 16, 2004 demotion to the entire board of directors during an official
meeting.

## CONCLUSIONS OF LAW

1.    This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C.
§ 1343.

2.    Venue is proper in this district and division pursuant to 42 U.S.C. § 2000e-5(f)(3).

3.    In a non-jury trial, credibility choices and the resolution of conflicting testimony are
the province of the trial judge. *Justiss Oil Co., Inc. v. Kerr-McGee Refining Corp.*, 75
F.3d 1057, 1067 (5th Cir. 1996).

### Title VII Retaliation Claims

4.    Title VII prohibits an employer from retaliating against any employee because the
employee participated in any investigation, proceeding, or hearing. *See* 42 U.S.C. §
2000e-3a.

5.    The *McDonnell Douglas* framework applicable to Title VII disparate-treatment cases is
also applicable to Title VII unlawful-retaliation cases based on circumstantial evidence.
*See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

6.    To establish a prima facie case of retaliation under the *McDonnell Douglas* scheme, a
plaintiff must show the following:

      (1) The plaintiff engaged in an activity protected by Title VII;

      (2) The occurrence of an adverse employment action; and

      (3) A causal connection between the protected activity and the adverse action.
      *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).

7.     Whether an employee has participated in any investigation, proceeding, or hearing is interpreted broadly. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 719 (5th Cir. 1997). The Court concludes that, by submitting statements in the Horace litigation, Williams engaged in a Title VII protected activity.

8.     Adverse employment actions involve "ultimate employment decisions"--hiring, granting leave, discharging, promoting, and compensating. *See Mattern*, 104 F.3d at 708. Demotion is an actionable adverse action. *Evans v. City of Houston*, 246 F.3d 344, 353 (5th Cir. 2001). The Court is of the opinion that Williams's demotion from dietary supervisor to head cook is an actionable adverse employment action.

9.     To establish a causal connection, a plaintiff must show that the employer's decision was based, in part, on knowledge of the employee's protected activity. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). The causal connection at this stage is not a "but for" standard, and a plaintiff is not required to prove that the protected activity was the sole factor motivating the employer's challenged decision. *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

10.    The Court, having considered Williams's disciplinary record up to April 19, 2004, Groveton's employment policies, and the timing between William's providing the statement and her demotion, concludes that Williams has sufficiently shown a causal connection for her April 19, 2004 demotion. *See Nowlin v. RTC*, 33 F3d 498, 507-08 (5th Cir. 1994). The same is true for Williams's reduction from full time to part time on June 16, 2004. However, after considering Williams's employment record to July 2004, Groveton's policies regarding the number of hours required to maintain full-time status, and Groveton's policy of giving full-time employees the first opportunity to schedule work, the Court has concluded that Williams has not sufficiently shown causation for her lack of hours while on part-time status.

11.  Since Williams has established at least a prima facie retaliation case for her April 19, 2004 demotion and her June 16, 2004 demotion, the burden of production shifts to Groveton to articulate legitimate, non-retaliatory reasons for these demotions. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). Groveton's burden is satisfied by introducing evidence which, if true, establishes that the decision was nondiscriminatory. *Id.* This means that the burden is one of production, not of persuasion. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

12.  The Court is of the opinion that Groveton, through Archer, has produced two items of credible evidence that satisfy its burden regarding the April 19, 2004 demotion: (1) Williams, as supervisor, did not always cover for her absent employees; and, (2) Williams mishandled her purchasing authority and directly disobeyed Archer's purchasing directives. As to the June 16, 2004 demotion from full-time to part-time, Archer credibly testified that Williams failed to work the thirty-seven hours per week required to maintain full-time status. These are all legitimate, non-retaliatory reasons for Williams's demotions.

13.   The burden now returns to Williams to prove that Groveton's reasons are pretextual. Specifically, Williams must show that "but for" providing the Horace litigation statements, she would not have been demoted. Williams has not done so. Failing to cover for absent employees and disobeying Archer's purchasing directives are both proper grounds for demotion. Additionally, failing to work the number of hours required to maintain full time status is a proper reason to downgrade an employee to part-time. Williams's Title VII retaliation claims are unsuccessful.

### Whistleblower Claim

14.  At trial, Groveton argued that Williams violated TEX. GOV'T CODE ANN. § 554.006(a) by failing to initiate action under Groveton's grievance procedures. In post-trial submissions, Groveton argues that it is a candidate for 11th Amendment immunity. Because this Court finds Groveton's grievance procedure argument persuasive, Groveton's 11th Amendment argument will not be addressed.

15.  The Texas Whistleblower Act provides as follows: "A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for

the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter." TEX. GOV'T CODE ANN. § 554.0035 (Vernon Supp. 2004). To "allege a violation" of the Whistleblower Act, "[a] public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action *before suing under this chapter*." TEX. GOV'T CODE ANN. § 554.006(a) (Vernon Supp. 2004) (emphasis added). Such a grievance must be initiated within 90 days from the date the alleged violation occurs or was discovered by the employee through reasonable diligence. TEX. GOV'T CODE ANN. § 554.006(b) (Vernon Supp. 2004).

16.   Ava Calvin ("Calvin"), Jessica Williams ("Jessica W."), and Linda Hall ("Hall"), all witnesses called by Williams, testified that Groveton's grievance procedures involve appeal to a supervisor, appeal to the administrator (Archer), and then appeal to the board of directors. Archer corroborated this testimony. Additionally, Calvin and Archer both stated that Groveton's appeal procedures are covered at in-service meetings on the 15th of every month.

17.   Williams testified that she has never appeared before the board of directors with an appeal of Archer's decision. The Court concludes that Williams's failure initiate action under Groveton's grievance procedures is fatal to her Whistleblower Claim.

18.   The Texas legislature, through the Whistleblower Act, provided a statutory cause of action,[1] provided the procedural prerequisites for filing suit,[2] and then waived sovereign immunity from suit once those requirements are met.[3] Trial courts do not have subject matter jurisdiction over a suit unless sovereign immunity has been waived, and sovereign immunity is not waived unless the statutory prerequisites for filing suit have been met.

19.   Williams knew of her termination in June of 2004. On the day of trial, over a year

---

[1]TEX. GOV'T CODE ANN. § 554.002 (Vernon Supp. 2004).

[2]TEX. GOV'T CODE ANN. § 554.005-.006 (Vernon Supp. 2004).

[3]TEX. GOV'T CODE ANN. § 554.0035 (Vernon Supp. 2004).

later, Williams admitted that she had not properly initiated her employer's grievance procedures, as contemplated by TEX. GOV'T CODE ANN. § 554.006(a) (Vernon Supp. 2004). This Court will not hear Williams's Whistleblower action. *See Johnson v. The City of Dublin*, 46 S.W.3d 401, 404-05 (Tex.App.–Eastland 2001, pet. denied). *See also City of San Antonio v. Marin*, 19 S.W.3d 438, 439 (Tex.App.–San Antonio 2000, no pet.).

### Due Process Claim under Article 1 § 19 of the Texas Constitution

20. Finally, Williams alleges that Groveton violated her due process rights under the Texas Constitution. Article 1, Section 19 of the Texas Constitution states: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

21. Texas law does not recognize a cause of action for damages for Texas constitutional violations. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). To the extent that Williams seeks other relief based on her "due course of law" claims, this Court applies federal due process standards. *See University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

22. A plaintiff claiming a deprivation of due process must clearly identify a property interest entitled to due process protection. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). There is no property interest in governmental employment unless state law creates such a property interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

23. "[E]mployment is presumed to be at-will in Texas." *Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam). "Absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). "To rebut the presumption of employment at will, an employment contract must directly limit in a meaningful and special way the employer's right to terminate the employee

without cause." *Hamilton v. Seque Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000) (per curiam) (quoting *Rios  v. Tex. Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex.App.–Corpus Christi 1996, writ denied) (internal quotation marks omitted)). "[A]ny modification of the at-will status must be based on express agreements rather than implied agreements," and any agreement "must be clear and explicit." *Cote v. Rivera*, 894 S.W.2d 536, 540 (Tex.App.–Austin 1995, no writ); *see also Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 803 (Tex.App.–Dallas 2003, no pet.).

24. Williams has shown no contract or agreement with Groveton that would limit Groveton's right to terminate her. Without such an agreement, Williams cannot prove the employment property interest necessary to support her due process claim. Her allegations under Article 1, Section 19 of the Texas Constitution are without merit.

**ORDER**

**IT IS ORDERED** that Judgment be rendered in favor of Defendant Groveton Texas Hospital Authority.

**IT IS FURTHER ORDERED** that Plaintiff is not entitled to recover any damages, court costs, or attorney's fees.

**IT IS FURTHER ORDERED** that each party shall bear its own costs.

**SO ORDERED.**

**SIGNED** this the *6* th day of October, 2005.

Thad Heartfield
United States District Judge